# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 08-CV-5240 (JFB) (ARL)
_____

NASHAUN RUFFINS,

Plaintiff,

VERSUS

THE DEPARTMENT OF CORRECTIONAL SERVICES,
THE NEW YORK STATE DIVISION OF PAROLE,
BRIAN FISCHER, individually and in his official capacity,
GEORGE B. ALEXANDER, individually and in his official capacity,
JOHN DOES 1-5, individually and in their official capacities, and
JOHN DOES 6-10, individually and in their official capacities,

Defendants.

_____

**MEMORANDUM AND ORDER**
March 31, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Nashaun Ruffins ("Ruffins") brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983"), seeking money damages against defendants George B. Alexander, as Chairman of the New York State Division of Parole, the New York State Division of Parole ("NYS Parole"), and John Does 1-5, as yet unnamed employees thereof (collectively, the "NYS Parole defendants"), as well as Brian Fischer, as the Commissioner of the Department of Correctional Services for the State of New York, the Department of Correctional Services for the State of New

York ("DOCS"), and John Does 6-10, as yet unnamed employees thereof (collectively, the "DOCS defendants"), alleging that defendants wrongfully detained plaintiff on two occasions for violations of a term of post-release supervision ("PRS") that was unlawfully imposed by DOCS, in violation of his constitutional rights. Plaintiff also asserts claims of false arrest and imprisonment, negligence, and gross negligence under New York state law for the same alleged conduct by defendants. In particular, plaintiff contends that his PRS term was administratively imposed in 1999 by DOCS in violation of the Due Process Clause of the

United States Constitution. Plaintiff was subsequently arrested for violations while serving his PRS sentence—once in 2007 and once in 2008—and was incarcerated several months for each violation. Plaintiff asserts Section 1983 claims for these periods of incarceration and contends that he should not have been sentenced to any term of PRS, since the judge did not impose PRS at plaintiff's sentencing in 1999.

Defendants now move to dismiss the § 1983 claims against them. In his opposition papers and at oral argument, plaintiff conceded that the § 1983 claims against DOCS and NYS Parole, as well as those against the individual defendants in their official capacities, are barred by the Eleventh Amendment. Thus, the only remaining federal claims are those against the individual defendants in their individual capacities pursuant to § 1983.

For the reasons set forth below, defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is granted on grounds of qualified immunity with respect to claims regarding plaintiff's arrest and incarceration in 2007 for violation of the terms of his PRS, and the Court seeks additional briefing on the qualified immunity issue for plaintiffs' arrest and incarceration in 2008 for a separate violation of the terms of his PRS.

In *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006), *writ of habeas corpus granted by* No. 03-CV-3104 (ERK), 2007 U.S. Dist. LEXIS 31942 (E.D.N.Y. May 1, 2007), *cert. denied Burhlre v. Earley*, 551 U.S. 1159 (2007), which involved a petition for a writ of habeas corpus, the Second Circuit held that the administrative imposition of a five-year PRS term by DOCS, pursuant to New York Penal Law § 70.45, was unconstitutional. However, prior to the *Earley* decision in 2006, it was not clearly established that the administrative imposition of plaintiff's PRS term violated plaintiff's constitutional rights, and it was objectively reasonable for the defendants to believe that their conduct did not violate plaintiff's rights. Moreover, even after *Earley*, state courts continued to disagree as to the precise application of *Earley* to Section 70.45, and some state courts held that PRS was automatic under state law such that it was not administratively imposed in violation of *Earley*. Similarly, *Earley* did not address the effect of its decision on those currently incarcerated due to violations of administratively imposed PRS terms or those currently under supervision for administratively imposed PRS terms. In other words, it was unclear whether (1) the jail house doors had to be opened for those in custody on violations of administratively imposed PRS terms, and supervision immediately terminated for those individuals with administratively imposed PRS terms, or (2) enforcement of the PRS terms could continue under state law until there was a re-sentencing which either eliminated the term or corrected the procedural error in the imposition of the PRS term. In fact, on remand in the *Earley* case, the federal judge concluded that Earley should not be released from incarceration on his PRS violation pending his re-sentencing in state court. Given this critical ambiguity regarding the implications of the *Earley* decision on those currently under PRS supervision and the disagreement among state courts about *Earley*'s application to interpretations of state law, this Court concludes that the defendants are entitled to qualified immunity for any conduct with respect to the arrest and incarceration of plaintiff in 2007 for violation of the terms of his PRS. It was objectively reasonable for the defendants to believe, given

the murky legal landscape that followed *Earley*, that they were not violating plaintiff's rights in 2007 by continuing to enforce his PRS.

The arrest and incarceration in 2008 for another PRS violation, however, requires additional briefing by the parties on the issue of qualified immunity. In particular, in 2008, two New York Court of Appeals decisions resolved the disagreement among lower state courts in the wake of *Earley* and made clear that, under state law, the mandatory PRS term had to be imposed at the time of sentencing to be valid. *See People v. Sparber*, 889 N.E.2d 459 (N.Y. 2008); *Garner v. N.Y. State Dep't of Corr. Servs.*, 889 N.E.2d 467 (N.Y. 2008). Shortly thereafter, the New York legislature passed Correction Law § 601-d, which created a procedure by which individuals who had been improperly sentenced could be identified and resentenced. From the complaint in this case, it appears that plaintiff was incarcerated on a PRS violation after the decisions in *Sparber* and *Garner* but before the effective date of Section 601-d. As discussed more fully below, this period was not the focus of the briefing by the parties and the Court believes that additional briefing is warranted to address the qualified immunity issue within that time frame.[1]

---

[1] The Court recognizes that defendants also have moved to dismiss on other grounds: (1) that plaintiff's action is barred by the statute of limitations; (2) that there is no allegation that defendants were personally involved in the alleged constitutional deprivation; and (3) that plaintiff fails to state a claim under § 1983 for false arrest and imprisonment. As discussed *infra*, the Court finds the statute of limitations argument to be without merit. With respect to the other grounds, the Court declines to address those arguments before deciding the dispositive question of qualified immunity because the other grounds

## I. BACKGROUND

### A. Facts

The following facts are taken from the complaint ("Compl."), as well as several exhibits attached to the defendants' moving papers.[2] These facts are not findings of fact

---

could potentially be remedied by amendments to the pleadings even if the motion were granted (and, to some extent, are intertwined with the qualified immunity issue). Thus, the Court will address those additional grounds only if it determines, after supplemental briefing, that there is no qualified immunity with respect to the remaining § 1983 claims in connection with the 2008 arrest and incarceration.

[2] With respect to the exhibits submitted by defendants, the Court takes judicial notice of the underlying state court sentence that was the basis of plaintiff's PRS term, as well as the administrative documentation of plaintiff's custody and release from DOCS. *See, e.g., Holloway v. McFarland*, Civil No. 07-2032 (AET), 2007 WL 3376683, at *1 n.1 (D.N.J. Nov. 13, 2007) ("Because Plaintiff's confinement status is available publicly on the DOC website, the Court takes judicial notice of the fact that Plaintiff was released from the custody of the DOC on August 9, 2007."); *Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (noting that a court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." (internal quotation and citation omitted)); *Washington v. U.S. Tennis Ass'n*, 290 F. Supp. 2d 323, 326 (E.D.N.Y. 2003) (stating that a court is "permitted to take judicial notice of court documents from previous actions"); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y. 2006) (noting that "the Court properly can take judicial notice of the filings and [an] Order in the Connecticut state court action" (citing *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364,

by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Plaintiff was sentenced on October 27, 1999 in the Supreme Court, Suffolk County, to two concurrent determinate prison terms of eight years, pursuant to Penal Law § 70.02. (Meier Decl., Ex. B.) He was received into the custody of DOCS on December 9, 1999. (Meier Decl., Ex. C.) On March 27, 2007, plaintiff was released from custody and began serving his five-year term of PRS. (Meier Decl., Ex. D.)

Plaintiff claims that he was never sentenced by any judge to any term of PRS. (Compl. ¶¶ 18, 25.) Instead, plaintiff alleges that unknown employees of DOCS, namely John Does 6-10, imposed the PRS term. (Compl. ¶¶ 19, 26.)

Subsequent to his release from DOCS' custody in March 2007, plaintiff was incarcerated in April 2007 for a violation of the terms of his PRS. (Compl. ¶16.) The

incarceration was based upon a violation petition allegedly filed by an unknown agent or agents of NYS Parole, namely John Does 1-5. (Compl. ¶ 17.) Plaintiff was released from the custody of DOCS in July 2007. (Compl. ¶ 20.)

Plaintiff was again confined by DOCS in April 2008 for a violation of the terms of his PRS. (Compl. ¶ 23.) A violation petition was allegedly filed by John Does 1-5 of NYS Parole. (Compl. ¶ 24.) Pursuant to New York Correction Law § 601-d, DOCS referred plaintiff back to the sentencing court and on September 17, 2008, pursuant to Penal Law § 70.85, the court re-sentenced plaintiff to his original sentence without any term of PRS. (Meier Decl., Exh. E.) Plaintiff was released by DOCS on September 26, 2008. (Compl. ¶ 27.)

B. Procedural History

Plaintiff filed this action on December 29, 2008. Defendants filed the instant motion on April 10, 2009. Plaintiff submitted his opposition on May 13, 2009. Defendants submitted their reply on May 29, 2009. Oral argument was held on June 19, 2009. This matter is fully submitted.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[3]

---

369 (7th Cir. 1983) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue."))); *Hill v. Goord*, 63 F. Supp. 2d 254, 256 (E.D.N.Y. 1999) ("Federal Rule of Evidence 201(b) provides that '[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.' In the Court's view, the Orders and documents related to Hill's related state case and parole hearings are capable of determination by sources whose accuracy cannot reasonably be questioned.").

---

[3] In addition to the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), defendants also move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court is aware that ordinarily "[a] court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the

the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. The Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citations omitted)).

### III. DISCUSSION

Plaintiff asserts several causes of action pursuant to § 1983 based upon the alleged violations of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff alleges that his constitutional rights were

---

merits, and therefore, an exercise of jurisdiction.'" *Coveal v. Consumer Home Mortgage, Inc.*, No. 04 Civ. 4755 (ILG), 2005 U.S. Dist. LEXIS 25346, at *7 (E.D.N.Y. Oct. 21, 2005) (quoting *Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction). However, defendants' arguments, including their statute of limitations arguments, are not jurisdictional in nature and thus are more properly considered under Rule 12(b)(6). *See, e.g.*, *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000) ("Court decisions often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim."); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."); *Calemine v. Gesell*, No. 06 Civ. 4736 (SJ) (RM), 2007 WL 2973708, at *1 n.1 (E.D.N.Y. Sept. 28, 2007) ("Though Defendants move pursuant to Rule 12(b)(1) and 12(b)(6) for failure to state a claim, the grounds for their motion, res judicata and statute of limitations, are both properly considered under Rule 12(b)(6).").

violated by the defendants, including the individual defendants in their individual capacities, when they wrongfully imposed the PRS term and then twice incarcerated him, once in 2007 and once in 2008, for violations thereof.

Under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges or immunities secured by the Constitution and federal law, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. § 1983 does not itself provide substantive rights but in fact offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985))).

Here, defendants do not argue that they did not act under color of state law. Instead, defendants move to dismiss the § 1983 claims on the following grounds: (1) plaintiff's claims are barred by the statute of limitations; (2) defendants are entitled to qualified immunity for their actions; (3) plaintiff has failed to sufficiently allege the personal involvement of the individual defendants in the alleged violations of his rights; and (4) plaintiff fails to state a § 1983 claim for false arrest and imprisonment because his arrests in 2007 and 2008 were based on probable cause. The Court examines the first two arguments and seeks additional briefing before addressing the remaining two.

A. Statute of Limitations

As a threshold matter, defendants argue that any claims under § 1983 are based upon the alleged unlawful imposition of the PRS term, which occurred in 1999, and are thus barred by the applicable three-year statute of limitations. The Court disagrees.

As there is no federal statute of limitations governing the Reconstruction-era civil rights statutes, the Supreme Court has advised that "federal courts should select the most appropriate or analogous state statute of limitations" to determine the proper limitations period. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987), *superseded on other grounds by statute*, 28 U.S.C. § 1658(a), *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004); *accord Wilson v. Garcia*, 471 U.S. 261, 276 (1985). With regard to § 1983 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York, pursuant to New York Civil Practice Law § 214(5). *See Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *accord Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002), *cert. denied*, 538 U.S. 922 (2003).

However, federal law governs the question of when a § 1983 claim accrues. *See M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003); *Pearl*, 296 F.3d at 80; *Covington v. City of N.Y.*, 171 F.3d 117, 121 (2d Cir. 1999). Under federal law, "the time of accrual [is] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Covington*, 171 F.3d at 121 (quotations and citations omitted).

In the instant case, it is undisputed that plaintiff's cause of action under § 1983 runs

three years from the date of its accrual. There is a dispute, however, about the accrual date. Defendants argue that the time of accrual is the point in time that plaintiff had reason to know of the injury—which they claim is the imposition of the PRS term to his sentence—and that time was either (1) on the date of his sentencing in October 1999, due to the public availability of N.Y. Penal Law § 70.45, which stated that PRS was a mandatory component of his sentence (*see* Meier Decl., Ex. B), or (2) December 16, 1999, when plaintiff was given a copy of a Legal Date Computation form by DOCS, which indicated the addition of PRS by the notation "PRS 05 00 00." (*See* Meier Decl., Ex. C.) The parties thus dispute the characterization of the alleged injury; defendants' position is that the injury was the allegedly unlawful imposition of the PRS terms in 1999, while plaintiff's position is that the trigger for accrual was the time of his release from his last incarceration on September 26, 2008.

Defendants point to *Sullivan v. New York State Department of Correctional Services*, 07 Civ. 7177 (SHS)(FM), 2008 U.S. Dist. LEXIS 67983, at *5 (S.D.N.Y. Aug. 14, 2008), *adopted by* No. 07 Civ. 7177 (SHS) (FM), 2008 U.S. Dist. LEXIS 75448 (S.D.N.Y. Sept. 29, 2008), as addressing this issue persuasively. However, that case applied the standard applicable to a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2244(d)(1)(D). *See id.* at *1, *13. Because the statutory standard for determining the accrual date in that context is "the date on which the *factual predicate* of the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D) (emphasis added), the court found the one-year statute of limitations governing petitioner's challenge in a habeas petition to the administrative imposition of PRS terms had already run, because petitioner

had received multiple notices by DOCS of his time computation forms beginning five years earlier. *See* 2008 U.S. Dist. LEXIS 67983, at *16-20. However, that analysis, which was undertaken in the context of a habeas corpus matter, is inapposite for the reasons discussed below.[4]

As the Second Circuit has noted, "in the case of some actions brought under § 1983, this general rule [under federal law that the time of accrual is that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action] is subject to the Supreme Court's analysis in [*Heck v. Humphrey*, 512 U.S. 477, 481 (1994)]." *Covington v. City of N.Y.*, 171 F.3d 117, 121 (2d Cir. 1999). Even assuming *arguendo* that plaintiff did have notice of the illegality of his PRS term in 1999 because of

---

[4] Moreover, defendants' position seems to lack support in caselaw addressing the statute of limitations applicable to § 1983 actions for false arrest and imprisonment. The statute of limitations in a § 1983 action for false imprisonment typically begins to run at the start of legal process in the detention, which, in this case, presumably would have been at the commencement of the parole hearings that resulted in his re-incarceration in 2007 and 2008, respectively. *See Wallace v. Kato*, 549 U.S. 384, 393 (2007). Thus, "a cause of action for false arrest accrues at the time of detention" and any damages attributable to actions thereafter are based on the tort of malicious prosecution. *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). Because in this case it is apparent that plaintiff's claim is not with respect to his original conviction but in relation to his re-incarceration in 2007 and 2008, his claims therefore accrued at the termination of each of the proceedings which resulted in his re-incarceration. This analysis, however, is subject to the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), discussed *infra*.

the existence of Penal Law § 70.45 or the Legal Date Computation of which plaintiff was purportedly given a copy, such knowledge does not defeat the timeliness of plaintiff's § 1983 claims in this case. That is because, in order to bring a cognizable § 1983 claim in this Court, plaintiff had to first establish the invalidity of that part of his sentence involving the PRS term at issue. Indeed, if plaintiff were to have succeeded on his § 1983 claims in this Court without doing so, such a result would have necessarily invalidated that portion of his sentence, in violation of *Heck*. The Supreme Court in that case explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his

> conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87 (footnote omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence.").

Importantly, the Supreme Court expressly stated in *Heck* that a plaintiff's § 1983 claim does not accrue until the underlying sentence or conviction is invalidated; thus, in this case, plaintiff's § 1983 cause of action did not accrue until September 17, 2008, when the state court re-sentenced him without any PRS term. (*See* Meier Decl., Ex. E.) The Supreme Court explained:

> Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, 1 C. Corman, Limitation of Actions § 7.4.1, p. 532 (1991); *Carnes v. Atkins Bros. Co.*, 123 La. 26, 31, 48 So. 572, 574 (1909), so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until

the conviction or sentence has
been invalidated.

*Heck*, 512 U.S. at 489-90. It does not matter that plaintiff did not seek invalidation of the PRS term within three years of 1999, or any other specific time period prior to his re-sentencing. The Second Circuit, applying *Heck* to a § 1983 case based on a false arrest claim where the arrest had occurred more than three years prior to the filing of the complaint, clarified that "the answer to [the question of timeliness] turns on whether a judgment in [plaintiff's] favor on the false arrest claim would have undermined the validity of any potential conviction in the criminal proceedings against him." *Covington*, 171 F.3d at 119. Because here a favorable judgment on plaintiff's § 1983 claims would have necessarily required a determination that the underlying PRS term was invalid, plaintiff's cause of action accrued only after his re-sentencing. Thus, the statute of limitations began to run on plaintiff's § 1983 claims on September 17, 2008. Because plaintiff filed the instant complaint on December 29, 2008, his claims are timely.

*Heck*'s application to the instant matter is straightforward. PRS terms, like good-time credits or parole terms, *see, e.g.*, *Edwards v. Balisok*, 520 U.S. 641, 645-48 (1997) (holding that the prisoner's § 1983 suit for declaratory relief and money damages was barred because nullification of the disciplinary procedures would lead necessarily to restoration of good-time credits and hence the shortening of the prisoner's sentence); *Farrell v. Burke*, No. 97 Civ. 5708 (DAB), 2004 WL 2813175, at *4 (S.D.N.Y. Dec. 8, 2004) ("Courts have applied *Heck* to bar state prisoners in custody from bringing Section 1983 actions challenging parole revocation unless that revocation decision is reversed or the underlying conviction is set aside." (collecting cases)), are considered by courts to be part of a prisoner's sentence, since they relate to the fact or duration of a prisoner's confinement. *See Garner v. N.Y. State Dep't of Corr. Servs.*, 889 N.E.2d 467, 470 (N.Y. 2008) ("PRS represents a significant punishment component that restricts an individual's liberty[.]"); *People v. Catu*, 825 N.E.2d 1081, 1082 (N.Y. 2005) ("[I]mposition of supervision is mandatory and thus has a definite, immediate and largely automatic effect on defendant's punishment."); *cf. Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) (stating, in the context of considering a writ of habeas corpus, that "[p]ost-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody'"). Indeed, individuals subject to PRS terms may be incarcerated for violations of such terms, as the plaintiff was in this case. The significant requirements of PRS have been summarized by the New York Court of Appeals:

> Postrelease supervision is significant. Upon release from the underlying term of imprisonment, a defendant must be furnished with a written statement setting forth the conditions of postrelease supervision in sufficient detail to provide for the defendant's conduct and supervision (*see* Penal Law § 70.45 [3]). In addition to supervision by and reporting to a parole officer, postrelease supervision may require compliance with any conditions to which a parolee may be subject (*see id.*), including, for example, a curfew, restrictions on travel, and substance abuse testing and treatment. Moreover,

postrelease supervision may require up to six months of participation in a residential treatment facility immediately following release from the underlying term of imprisonment (*see id.*; Correction Law § 2 [6]). A violation of a condition of postrelease supervision can result in reincarceration for at least six months and up to the balance of the remaining supervision period, not to exceed five years (*see* Penal Law § 70.45 [1]).

*Catu*, 825 N.E.2d at 1082.

In addition, the fact that the PRS term was added administratively, rather than judicially, does not render it a separate component from plaintiff's sentence and thus beyond the reach of *Heck*. As discussed *infra*, the New York Court of Appeals has expressly stated that such addition of a PRS term by DOCS, although made by an administrative body, is nonetheless performed in a judicial capacity. *See Garner*, 889 N.E.2d at 469. Indeed, it is because such action is considered judicial that the Court of Appeals held that it is also in violation of DOCS' limited jurisdiction, as discussed *infra*. *See People v Sparber*, 889 N.E.2d 459, 464-65 (N.Y. 2008). Moreover, *Heck* applies precisely to those situations where an underlying conviction or sentence was unconstitutional or in violation of federal law. It requires a declaration of such invalidity before a parallel § 1983 claim accrues—thus, every § 1983 claim for damages relating to a challenged sentence will involve a part, or whole, of that sentence that has been previously nullified or called into question. In any event, the case authority is clear that *Heck* also applies to administrative

decisions by prisons and parole boards. *Wilkinson*, 544 U.S. at 84 ("*Heck* is consistent with other cases permitting prisoners to bring § 1983 challenges to prison administrative decisions."); *see also Dallas v. Goldberg*, 143 F. Supp. 2d 312, 320-23 (S.D.N.Y. 2001) (concluding that the plaintiff's pursuit of damages with respect to his parole violation incarceration was barred by *Heck* and stating that "[t]he *Heck* holding applies equally in the parole revocation context"). Thus, even if the imposition of the PRS term, or detention on the basis thereof, was considered to be an administrative decision by NYS Parole and/or DOCS, a § 1983 claim based on such would still be subject to the limitations in *Heck*.

Accordingly, because plaintiff filed the complaint in the instant action within three years of having the PRS term removed from his sentence by the re-sentencing court, the Court concludes that his § 1983 claims are timely. *See Scott v. Fischer*, No. 07 Civ. 11303 (NRB), 2009 WL 928195, at *4 (S.D.N.Y. Mar. 30, 2009).

## B. Qualified Immunity

Defendants argue that all of the individual defendants are entitled to dismissal of the § 1983 claims against them on the grounds of qualified immunity. As set forth below, the Court finds that there are three relevant time periods for defendants' actions. The Court concludes that defendants are entitled to qualified immunity for their actions during the first two periods—namely, (1) pre-*Earley*, and (2) post-*Earley* and pre-*Sparber/Garner*. However, the Court requires additional briefing to determine the applicability of the doctrine of qualifiied immunity to the plaintiff's incarceration in the post-*Sparber/Garner* period.

### 1. Legal Standard

"Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). The Second Circuit has held that "a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (internal quotation omitted). This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal citations omitted).

According to the Second Circuit, government actors may be shielded from liability for civil damages if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell*, 316 F.3d at 385; *see also Fielding v. Tollaksen*, 257 F. App'x 400, 401 (2d Cir. 2007) ("The police officers in turn, are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, — U.S. — , 129 S. Ct. 808, 815 (2009) (internal quotation marks and citations omitted).

As the Second Circuit has also noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (quotation omitted)). Thus, qualified immunity, just like absolute immunity, is not merely a defense but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should similarly be decided by a court "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Still, the Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). In addition, in such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Holmes v. Poskanzer*, 342 F. App'x 651, 652 (2d Cir. 2009) (quoting *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008)).

In a recent decision, the Supreme Court held that, in evaluating a qualified immunity defense, a court no longer needs to first determine that a plaintiff's constitutional rights were in fact violated. *See Pearson*, 129 S. Ct. at 818. In *Pearson*, the Supreme Court instructed that "[t]he judges of the district

courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis [whereby a court must decide (1) whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct] should be addressed first in light of the circumstances in the particular case at hand." *Id*; *accord Kelsey v. County of Schoherie*, 567 F.3d 54, 61 (2d Cir. 2009) ("[W]e are no longer required to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so." (citation omitted)).

## 2. Application

"A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established *at the time of the conduct at issue*." *See Davis v. Scherer*, 468 U.S. 183, 197 (1984) (emphasis added). Here, plaintiff was sentenced to his original sentence on October 27, 1999. DOCS then administratively imposed the PRS term on December 15, 1999. Plaintiff was released on March 27, 2007 and began serving his PRS term at that time. In April 2007, he was arrested and re-incarcerated until July 2007 for violating his PRS. In April 2008, he was arrested and confined a second time for a PRS violation. He was re-sentenced on September 17, 2008 and released from custody on September 26, 2008. Because the allegations relevant to this case span the 1999-2008 time period, a discussion of the development of the relevant law during that period is warranted.

Plaintiff claims that when he was sentenced in October 1999, the sentencing court did not advise him of any PRS term. However, pursuant to New York Penal Law § 70.02, because plaintiff was sentenced as a class B violent felony offender, he was required to serve a mandatory five-year period of PRS. *See* N.Y. Penal Law § 70.02. At the time, "New York state courts routinely upheld the administrative imposition of mandatory PRS." *See Scott*, 2009 WL 928195, at *2 (citing *Deal v. Goord*, 778 N.Y.S.2d 319, 320 (App. Div. 2004); and *People v. Lindsey*, 755 N.Y.S.2d 118, 120 (App. Div. 2003)); *People v. Bloom*, 703 N.Y.S.2d 763, 763 (App. Div. 2000).[5]

---

[5] The Court notes that there were some cases during this time period in which New York state courts declined to uphold the administrative imposition of mandatory PRS. *See, e.g.*, *People v. Bundy*, 790 N.Y.S.2d 775, 776 (App. Div. 2005) ("In situations where a defendant was not informed of the direct consequence of postrelease supervision at the time of entering a plea and the plea and sentence preceded our decision in *People v. Goss*, 733 N.Y.S.2d 310 (App. Div. 2001), we have afforded the defendant the opportunity to withdraw his or her plea." (collecting cases)); *People v. Melio*, 760 N.Y.S.2d 216, 219 (App. Div. 2003) ("[U]nder New York's statutory scheme, [PRS] has a 'definite, immediate and largely automatic effect on [a] defendant's punishment' and is therefore a direct consequence of a plea about which a defendant must be informed before the plea is entered."); *People v. Brown*, 741 N.Y.S.2d 923, 923 (App. Div. 2002) ("Every determinate sentence automatically includes 'as part thereof' a period of postrelease supervision (Penal Law § 70.45[1]), and '[f]ailure to advise a defendant of the statutorily required postrelease supervision requires that he be permitted to withdraw his guilty plea.'" (citing *People v. Jachimowicz*, 738 N.Y.S.2d 770, 770 (App. Div. 2002))); *People v. Harler*, 744 N.Y.S.2d 916, 916-17 (App. Div. 2002) (finding

On June 9, 2006, the Second Circuit decided *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006), *writ of habeas corpus granted by* No. 03-CV-3104, 2007 U.S. Dist. LEXIS 31942 (E.D.N.Y. May 1, 2007), *cert. denied Burhlre v. Earley*, 551 U.S. 1159 (2007). In that case, which involved a petition for a writ of habeas corpus, the Second Circuit held that the imposition of a five-year PRS term by DOCS, pursuant to New York Penal Law § 70.45, was contrary to clearly established federal law, sourcing from the "due process guarantees of the United States Constitution." *See id.* at 76 n.1. In reaching this conclusion, the Second Circuit relied on *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936), in which the Supreme Court stated that "[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court." *Id.* at 464. The Second Circuit reasoned:

_____

that the failure to advise defendant of the required period of PRS necessitates reversal of defendant's judgment of conviction after defendant waived right to a jury trial and was convicted because the failure to inform him of PRS "invalidate[d] his waiver of, *inter alia*, his right to a jury trial and election to proceed upon the stipulated facts because he was not fully informed of that significant punitive consequence"); *People v. Alcock*, 728 N.Y.S.2d 328, 331 (Sup. Ct. 2001) ("This court agrees with all the above cited cases and holds that post-release supervision is a direct consequence of a guilty plea and a court must inform a defendant of post-release supervision."). However, the Court notes that those cases were limited to instances in which the defendant pled guilty to a sentence or waived his right to a trial by jury and was not informed of mandatory PRS at the time of the plea or waiver. Because Ruffins was convicted and imprisoned subsequent to a jury trial, those cases are not relevant in the instant action.

*Wampler* went on to articulate a broader holding: The judgment of the court establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment. *Wampler* thus provides clearly established Supreme Court precedent supporting Earley's claim. The only cognizable sentence is the one imposed by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect.

The sentence imposed by the court on Earley was six years in prison. The judgment authorized the state to incarcerate him for six years and no more. Any addition to that sentence not imposed by the judge was unlawful. Yet Earley was subjected to further custody. Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be "custody." Earley was released from prison in 2004 but was reincarcerated for violating the terms of his PRS and is currently in prison.

Earley's imprisonment was authorized not by the sentence as calculated by DOCS but by the judgment of the court. If, as in *Wampler*, an erroneous order of commitment prepared by the clerk of court with the court's knowledge cannot alter

the sentence imposed by the court, then plainly a later addition to the sentence by an employee of the executive branch cannot do it. Only the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty. The state court's determination that the addition to Earley's sentence by DOCS was permissible is therefore contrary to clearly established federal law as determined by the United States Supreme Court.

. . .

New York's Department of Correctional Services has no more power to alter a sentence than did the clerk of the court in *Wampler*. Earley's sentence was therefore never anything other than the six years of incarceration imposed on him by the judge at his sentencing hearing and recorded in his order of commitment. The additional provision for post-release supervision added by DOCS is a nullity. The imposition of a sentence is a judicial act; only a judge can do it. The penalty administratively added by the Department of Corrections was, quite simply, never a part of the sentence.

*Earley*, 451 F.3d at 75-76 (internal citations omitted). At the close of the *Earley* decision, the Second Circuit expressly stated that it had

no opinion as to whether the state could move in state court to modify the petitioner's sentence to include the PRS term and remanded the case for the possible issuance of the writ by the district court, without prejudice to the state's right to move for re-sentencing. *See id.* at 77. With respect to this issue, the Second Circuit specifically stated:

[W]hen DOCS discovered the oversight made by Earley's sentencing judge, the proper course would have been to inform the state of the problem, not to modify the sentence unilaterally. The state then could have moved to correct the sentence through a judicial proceeding, in the defendant's presence, before a court of competent jurisdiction.

. . .

Because we find that clearly established Supreme Court precedent renders the five-year PRS term added to Earley's sentence by DOCS invalid, we vacate the district court's judgment and remand the case for that court to determine whether Earley's petition for a writ of habeas corpus was timely filed. Should the district court determine that the petition was timely, it is instructed to issue a writ of habeas corpus excising the term of post-release supervision from Earley's sentence and relieving him of any subsequent penalty or other consequence of its

imposition. Our ruling is not intended to preclude the state from moving in the New York courts to modify Earley's sentence to include the mandatory PRS term.

*Id*. at 76-77. The court did note, however, that at the time it was unclear under New York law whether such a motion by the state could be timely made. *See id.* at 77 n.2.

In 2008, the New York Court of Appeals also held that the administrative imposition of a PRS term is invalid but on different grounds. In *People v. Sparber*, 889 N.E.2d 459 (N.Y. 2008), the Court of Appeals held that the failure of a sentencing court to orally pronounce a term of PRS rendered that part of the sentence invalid because it did not comport with state law. *See id.* at 460-61. *Sparber* was a consolidated appeal of five similar cases, all of which involved the imposition of PRS terms that were noted on the worksheet signed by the sentencing court and/or the commitment sheet signed by the clerk of the sentencing court. The Court of Appeals explained:

> [E]ven in cases with mandatory PRS terms, the defendant still has a statutory right to hear the court's pronouncement as to what the entire sentence encompasses, directly from the court. CPL 380.20 and 380.40 reflect the view that sentencing is a critical stage of criminal proceedings that is of "monumental significance because it determines the price society will exact for the particular transgressions involved" (*People v Perry*, 36

NY2d 114, 119 [1975]). Because that is so, a clerk's notations on a worksheet or a commitment sheet, which are presumably recorded outside of the defendant's presence, do not satisfy the statutory mandate.

> Moreover, judicial endorsement of the clerk's actions, through any method other than pronouncement in the defendant's presence, could not cure the sentencing courts' PRS errors. CPL 380.20 and 380.40 impose a distinct obligation upon "the court[.]" That duty is nondelegable; it applies to sentences that are determinate and indeterminate, mandatory and discretionary.

*Id*. at 465 (additional citations omitted). The Court of Appeals further stated that "[t]he sole remedy for a procedural error such as this is to vacate the sentence and remit for a re-sentencing hearing so that the trial judge can make the required pronouncement." *Id*. at 465-66.

In a case issued by the Court of Appeals on the same day as *Sparber*, the court held that a writ of prohibition barring DOCS from adding a mandatory period of PRS could issue because, pursuant to CPL 380.20 and 380.40, only the sentencing judge is authorized to pronounce the PRS component of a sentence. *See Garner*, 889 N.E.2d at 469-70 (N.Y. 2008). Thus, any such administratively added PRS term was an act by DOCS in excess of its jurisdiction, since the "CPL's express mandate [is] that sentencing is a judicial function[.]" *Id*. In contrast to the cases

consolidated in *Sparber*, the commitment order in *Garner* "bore no indication of a PRS term," and the court noted that it had previously held that "'prison officials are conclusively bound by the contents of commitment papers accompanying a prisoner'" and must "'comply with the plain terms of the last commitment order received[.]'" *Id*. at 470 (internal quotations marks omitted) (quoting *In re Murray v. Goord*, 801 N.E.2d 385, 387-88 (N.Y. 2003)). *Garner*, however, expressly did not pass on the constitutional arguments before it or on the applicability of the Second Circuit's opinion in *Earley v. Murray*, instead resting its decision on statutory grounds. *See id.*

In response to the *Garner* and *Sparber* decisions, the New York legislature passed Correction Law § 601-d, which created a procedure by which improperly sentenced defendants could be identified and resentenced. That law became effective June 30, 2008.

The evolving legal landscape discussed above suggests that there are three distinguishable time periods in the qualified immunity analysis here: (1) the time period before the Second Circuit's decision in *Earley*; (2) the time period following *Earley* but prior to the 2008 New York Court of Appeals decisions in *Sparber* and *Garner*; and (3) the time period following *Sparber* and *Garner*. The question in each time frame is whether the defendants violated clearly established federal statutory or constitutional rights of which a reasonable person would have known. *See Pearson*, 129 S. Ct. at 815. The Court undertakes the analysis within each time period in turn.

a. Pre-*Earley*

Defendants argue that the administrative imposition of plaintiff's PRS term occurred seven years prior to *Earley* and, thus, it was not clearly established at that time that such administrative imposition violated plaintiff's constitutional rights, and it was objectively reasonable for the defendants to believe that their conduct did not violate plaintiff's rights. The Court agrees.

At the time that plaintiff was sentenced to his original sentence—and the PRS term was added by DOCS shortly thereafter—the state law requiring the mandatory term of PRS in a conviction such as that of plaintiff's was only one-year old. "In eliminating parole for all violent felony offenders in 1998, the Legislature enacted a scheme of determinate sentencing to be followed by periods of mandatory postrelease supervision (*see* L 1998, ch 1 [Jenna's Law]), and defined each determinate sentence to 'also include[ ], as a part thereof, an additional period of post-release supervision' (Penal Law § 70.45 [1]; *see also* Senate Mem in Support, 1998 McKinney's Session Laws of NY, at 1489 [describing postrelease supervision as 'a distinct but integral part of the determinate sentence'])." *Catu*, 825 N.E.2d at 1082. Pursuant to "Jenna's Law," plaintiff was required to serve a mandatory term of PRS on the basis of his conviction as a violent felony offender. "'[A]bsent contrary direction, state officials . . . are entitled to rely on a presumptively valid state statute . . . until and unless [the statute] is declared unconstitutional . . . with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaw.'" *Sinclair v. Goord*, No. 09:07-CV-1317, 2009 U.S. Dist. LEXIS 67901, at *9 (N.D.N.Y. Mar. 10, 2009) (quoting *Vives v. City of N.Y.*, 405 F.3d 115, 117 (2d Cir. 2005)). Defendants were "entitled to rely on the New York Penal Law, and did so when adding a term of post-release supervision to [p]laintiff's sentence." *Id.*

Although the sentencing court did not orally pronounce the addition of plaintiff's PRS, the administrative addition of such a term, whether by a clerk of the court or by DOCS, was consistently upheld as valid by New York courts at that time. *Scott*, 2009 WL 928195, at *2; *see, e.g.*, *Deal*, 778 N.Y.S.2d at 320; *Lindsey*, 755 N.Y.S.2d 118; *Bloom*, 703 N.Y.S.2d at 763.[6]

In light of the overwhelming authority upholding such administratively added PRS terms pre-*Earley*, purportedly pursuant to New York Penal Law, the Court concludes that it was not clearly established during the pre-*Earley* time period that the administrative imposition of a mandatory PRS term violated any prisoner's constitutional rights.

The Court is aware that *Earley* expressly stated, however, that the right an individual had to have his sentence pronounced by a court was "clearly established" seventy years prior by the Supreme Court in *Wampler*. However, the Second Circuit's determination was made in the context of an application for a writ of habeas corpus, which is distinct from the context of qualified immunity analysis. Several circuits have made clear that the phrase "clearly established federal law" for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in the habeas context has a different meaning from "clearly established

federal law" for the purposes of qualified immunity. *See, e.g.*, *Williams v. Ballard*, 466 F.3d 330, 334 (5th Cir. 2006) ("While [plaintiff's] right may have been 'clearly established' under AEDPA . . . it was not 'clearly established' such that defendants should be subjected to liability for their reasonable belief in the legality of their actions."); *Coleman v. Dretke*, 409 F.3d 665, 668 (5th Cir. 2005) ("Habeas law and the law of qualified immunity are 'doctrinally distinct'" (citation omitted)); *Bell v. Jarvis*, 236 F.3d 149, 161 n.8 (4th Cir. 2000) ("[U]nlike in the doctrinally distinct area of qualified immunity, [court of appeals] decisions in federal habeas cases do not create 'clearly established' law for state courts deciding future habeas cases."); *see also Sinclair*, 2009 U.S. Dist. LEXIS 67901, at *9 ("[T]he requirement that law is clearly established for AEDPA purposes is doctrinally distinct from the requirement that law be clearly established for purposes of qualified immunity."); *see also Williams v. Taylor*, 529 U.S. 362, 380 n.12 (2000) ("We are not persuaded by the argument that because Congress used the words 'clearly established law' and not 'new rule,' it meant in this section to codify an aspect of the doctrine of executive qualified immunity rather than *Teague*'s antiretroactivity bar."). This difference stems from the different purposes of AEDPA and qualified immunity.

At the time the Second Circuit had *Earley* before it for consideration, the relevant law may have been clearly established for the purposes of AEDPA and not clearly established for the purposes of qualified immunity. That is, courts applying Supreme Court precedent, namely, *Wampler*, should have recognized that the imposition of PRS by anyone other than the sentencing judge was contrary to federal law. That does not necessarily mean, however, that a government official should have recognized the same. Indeed, it is difficult to say that DOCS and

---

[6] *But see supra* note 5 and accompanying text. The Court notes that Ruffins was convicted after a jury trial; accordingly, he would not have been entitled to the benefit of any of the New York state court rulings that permitted prisoners whose PRS had been administratively imposed to withdraw their guilty pleas or waiver of the right to a trial by jury. The Court further notes that none of the cases in which a guilty plea or jury trial waiver was vacated due to administratively imposed PRS pre-dates the time at which Ruffins's PRS was administratively imposed in 1999.

NYS Parole officials were obligated to understand the constitutional ramifications of *Wampler* with respect to Jenna's Law when New York state and federal courts apparently could not understand the distinction themselves. Such a result would undermine the purpose of qualified immunity, which is to shield government officials in the exercise of their duties under these kinds of circumstances. It was objectively reasonable for defendants to rely on the caselaw authority, particularly in light of the silence in the language of Jenna's Law with respect to how the PRS would be imposed, to add a mandatory term of PRS in the custody papers of a prisoner. Indeed, they believed that they were not adding this term themselves but were only noting what was mandated by law on the documents. In reaching this conclusion, the Court joins several other courts in this Circuit that have reached the same conclusion based on sound analysis. *See, e.g., Rodriguez v. Fischer*, No. 08-CV-4662 (SJF)(MLO), 2010 WL 438421, at *6 (E.D.N.Y. Feb. 3, 2010); *Rivers v. Fischer*, No. 08 Civ. 8906(DAB), 2009 WL 3169966, at *3 (S.D.N.Y. Sept. 28, 2009); *Scott*, 2009 WL 928195, at *5 & n.2; *Sinclair*, 2009 U.S. Dist. LEXIS 67901, at *12-17.

In sum, from the time that Jenna's Law was enacted to the time the Second Circuit rendered its decision in *Earley*, it was not clearly established that DOCS' addition of a term of PRS was in violation of Ruffins's constitutional rights, and it was objectively reasonable for defendants to have administratively imposed the PRS term. Accordingly, the defendants are entitled to qualified immunity protection for their actions pre-dating *Earley*, including the addition of the PRS term in 1999.

b. Post-*Earley* and Pre-*Sparber*/*Garner*

Defendants further argue that the Second Circuit's decision in *Earley* did not clearly establish, for the purposes of qualified immunity, that the administrative imposition of a period of PRS violated a constitutional right. (*See* Defs.' Mem. of Law at 8.) The Court agrees and, thus, the defendants are entitled to qualified immunity for their actions during the post-*Earley*, pre-*Sparber*/*Garner* period.

As set forth in the legal standard for qualified immunity discussed *supra*, defendants are entitled to qualified immunity if it was objectively reasonable for them to believe that their actions did not violate plaintiff's constitutional rights. Despite the clarity of *Earley* in holding that the only sentence legally imposed is that which is pronounced by a judge, the Court concludes that it was objectively reasonable for all DOCS and NYS Parole officials to believe that continued enforcement of an administratively imposed period of PRS (pending guidance on an appropriate remedy) was not in violation of a prisoner's constitutional rights.

As a threshold matter, the Court addresses the scope of the *Earley* decision. The Second Circuit in *Earley* held that the administrative imposition of PRS to a prisoner's sentence violated a prisoner's constitutional rights. The primary thrust of *Earley* is that DOCS could not administratively impose PRS; rather, PRS could only be imposed by a judge at sentencing or a resentencing proceeding. The Second Circuit explicitly stated that "the sentence imposed by the sentencing judge is controlling; it is this sentence that constitutes the court's judgment and authorizes the custody of a defendant." The Court further went on to announce the "basic principle of criminal sentencing," that "[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court . . . . Until corrected in a sentencing proceeding, it says what it was meant to say, and this by an irrebuttable presumption." *Earley*, 451 F.3d

at 74. However, *Earley* did not speak authoritatively on the remedial issue of how to treat prisoners who were currently serving their PRS terms or were currently imprisoned for violation of the terms of their administratively imposed PRS.

This issue was addressed, however, by Judge Korman on remand of Earley's case. At that point, Judge Korman noted that Earley was "in the midst of serving a sentence for a violation of the terms of his release, after he served his six-year sentence in this case." *Earley v. Murray*, No. 03-CV-3104 (ERK), 2007 U.S. Dist. LEXIS 31942, at *3 (S.D.N.Y. May 1, 2007). On remand, Judge Korman explicitly stated that Earley should not be released pending resentencing:

> This brings me to the formulation of the appropriate remedy. Consistent with the instruction of the Second Circuit, I grant the petition for a writ of habeas corpus. Nevertheless, I stay the order for twenty-eight days to permit the sentencing court to exercise its power to conform the sentence to the mandate of New York law. Because petitioner has already served part of his PRS, I assume the correction of the sentence will be *nunc pro tunc*. If the sentence is corrected to include the PRS, the District Attorney may move for reconsideration of the order granting the writ and the petitioner may renew his claim that the conviction should be set aside for other reasons.

. . .

This is a defendant who needs supervised release. *The remainder of his sentence and the period of supervision should not be disturbed because of a ministerial error that may be rectified easily*.

*Id.* (emphasis added). Thus, Judge Korman ruled that the administrative imposition of PRS did not require immediate expungement of the prisoner's PRS sentence nor did it require that the jailhouse doors be opened to release all prisoners whose PRS terms had been administratively, rather than judicially, imposed.

At the same time, during the period following the Second Circuit's opinion in *Earley* but prior to the rulings of the New York Court of Appeals in *Sparber* and *Garner*, New York state courts were offering no clear guidance regarding the holding of *Earley* or its application. Defendants point to several New York state court opinions during this time period that demonstrate that the New York courts were in severe disagreement as to *Earley*'s application. In fact, at least one New York state court expressed its own confusion regarding the proper procedure to follow to address illegally imposed administrative terms of PRS under *Earley*. In *People v. Keile*, No. 9917-98, 2006 WL 2569964 (Sup. Ct. Sept. 5, 2006), the court opined:

> The *Earley* case creates confusion about the legal status of the term of post-release supervision that was added to defendant's sentence by the Department of Correctional Services. If *Earley* correctly interpreted federal constitutional law, defendant's sentence currently does not include a term of post-release supervision, and

he may not be subjected to post-release supervision when he is released from prison, unless this court resentences him before then and imposes the term of post-release supervision that this court neglected to impose on the day of sentencing. But this court's understanding of law is that the defendant cannot be resentenced at this point even though a determinate sentence without a period of [PRS] would violate state law (*see People v. Riggins*, 164 A.D.2d 797, 797 (1st Dep't 1990) (court lacks inherent power to correct illegal sentence more than two years after sentencing unless court misspoke when imposing sentence)).

This court concludes that the New York appellate courts deserve an opportunity to decide whether to follow *Earley*, *see People v. Kin Kan*, 78 N.Y.2d 54, 60 (1991) (interpretation of federal constitutional law by a lower federal court is persuasive but not binding authority on New York courts). Ordinarily, a court must follow its understanding of the law and await an appeal. But this is a unique situation. This defendant, numerous other defendants who have had a term of post-release supervision added to their sentences, the Department of Correctional Services, this court, and other courts need guidance about how to proceed in this situation.

Therefore, this court will resentence defendant and impose the mandatory term of five years of post-release supervision that was not imposed at sentencing. This resentencing will expedite appellate review of this issue.

*Id.* at *2-3; *see also People v. Edwards*, No. 5588/2001, 2007 WL 969416, at *8, *9 (Sup. Ct. Mar. 21, 2007) ("The state and federal appellate rulings [since *Earley*] have generated numerous, and varied, thoughtful responses from state trial courts which have struggled to reconcile these inconsistencies in handling challenges to unannounced [PRS] terms. . . . [T]his court must resolve the questions before it in light of the conflicting interpretations of *Wampler* and *Earley* found in the First Department's *Sparber-Lingle-Thomas* line of cases, which clearly bind this court, but which differ factually from this case, on the one hand, and the decisions of the Second Department in the *Smith-Noble-Wilson* line of cases, on the other, which are factually identical to this case, and would, in the absence of controlling precedent in the First Department, dictate the decision here.").

To be sure, after the Second Circuit issued its opinion, some state courts embraced *Earley*, finding that administratively imposed PRS required that prisoners' sentences be amended or prisoners should be resentenced, while other courts followed *Earley* and concluded that the proper remedy was to remove PRS entirely from the prisoner's sentence; still other courts concluded that *Earley* was not binding on New York state courts, and thus, under New York Penal Law, the five-year PRS term was automatically included in certain prisoners' sentences, regardless of whether the PRS term was administratively or judicially imposed. *Compare People ex rel. Gerard v. Kralik*, 843 N.Y.S.2d 398, 399 (App. Div. Oct. 9, 2007)

(following *Earley* and determining that prisoner whose PRS term had been administratively imposed was entitled to immediate release from custody); *People v. Noble*, 831 N.Y.S.2d 198, 198 (App. Div. Feb. 13, 2007) ("Neither the sentencing minutes, nor the court's order of commitment, mentioned the imposition of any period of [PRS]. Therefore, the sentence actually imposed by the court never included, and does not now include, any period of [PRS]."); *People v. Smith*, 829 N.Y.S.2d 226, 227 (App. Div. Feb. 6, 2007) (same); *Coleman v. N.Y. State Dep't of Corr. Servs.*, No. 36119/2007, 2008 WL 711730, at *5 (Sup. Ct. Mar. 14, 2008) ("[S]everal State Supreme Court decisions decided since *Hill* have followed the position of the Second Circuit in *Earley*, that a 'judicially imposed sentence includes only those elements explicitly ordered by the sentencing judge." (collecting cases)); *People ex rel. Huff v. Warden, Riker's Island Corr. Facility*, No. 340795-07, 2008 WL 53909, at *2 (Sup. Ct. Jan. 4, 2008) (finding that when sentencing judge and defendant's commitment papers were silent regarding term of PRS, DOCS was "conclusively bound" by the contents of the commitment papers); *People v. Wilson*, 829 N.Y.S.2d 917, 917 (Sup. Ct. Feb. 27, 2007) (following *Smith* and *Lingle*); *Matter of Watters v. Dennison*, 827 N.Y.S.2d 596, 600 (Sup. Ct. Nov. 3, 2006) (concluding, in an Article 78 proceeding initiated by prisoner, that when DOCS administratively imposed five-year PRS term to prisoner's sentence, *Earley* required that prisoner's PRS term and parole violation warrant be vacated); *People v. Keile*, No. 9917-98, 2006 WL 2569964, at *2-3 (Sup. Ct. Sept. 5, 2006) (concluding that *Earley* required that defendant be resentenced in order to impose PRS term); *People v. Ryan*, 822 N.Y.S.2d 856, 859-60 (Sup. Ct. July 28, 2006) (finding that when sentencing judge incorrectly stated that PRS term should be 2½ years instead of the mandatory five-year PRS term, *Earley* required that defendant was entitled to

enforcement of the sentence as originally imposed); *People v. Cephus*, No. 7737/01, 2006 WL 2714448, at *3 (N.Y. Sup. Ct. June 28, 2006) (finding that when the sentencing judge did not include PRS in defendant's sentence, *Earley* required that defendant's sentence be amended or defendant be resentenced), *with People v. Thomas*, 826 N.Y.S.2d 36, 37-38 (App. Div. Dec. 7, 2006) (finding that defendant's claim regarding administrative imposition of PRS was unpreserved and declining to reach "this unpreserved issue in the interest of justice," but nonetheless noting that there is no "constitutional infirmity" with DOCS "clarifying" a defendant's sentence to include PRS); *People v. Lingle*, 825 N.Y.S.2d 12, 14-15 (App. Div. Nov. 14, 2006) (stating that the Penal Law requires PRS, and thus even though sentencing court had not explicitly imposed PRS, it was included in prisoner's sentence, and further noting that "[e]ven assuming the existence of a constitutional requirement that every portion of a sentence be 'entered upon the records of the court,' [the administrative imposition of PRS by DOCS into the prisoner's commitment sheet] satisfied such a requirement"); *People v. Sparber*, 823 N.Y.S.2d 405, 406 (App. Div. Nov. 9, 2006) ("[E]ven though the court's oral sentence was silent as to PRS, it necessarily included a five-year term thereof . . . ."); *People v. Edwards*, No. 5588/2001, 2007 WL 969416, at *10, *13 (Sup. Ct. Mar. 21, 2007) (concluding that there was "no violation of *Wampler*, not because the PRS term was reflected in a writing, but because in its view, the PRS was, implicitly, imposed *by the judge* in pronouncing the determinate term," but acknowledging that "[i]f defendant were to be re-sentenced to a term expressly including the PRS, no constitutional issues would remain under *Earley*, or its reading of *Wampler*. And, pursuant to *Hill*, such a proceeding would be a permissible procedural exception to CPL § 430.10 under *Williams* and related cases, if done to correct the illegality

recognized by the Second Circuit in *Earley I* and *II*."); *People ex rel. White v. Warden, Rikers Island Corr. Facility*, 833 N.Y.S.2d 363, 367 (Sup. Ct. Jan. 26, 2007) ("Since *Earley* was decided, the First Department has consistently rejected constitutional challenges to periods of [PRS] that were not announced by the court at the time of sentence, but nonetheless appeared in a court document."); *Quinones v. State Dep't of Corr.*, 824 N.Y.S.2d 877, 881 (Sup. Ct. Nov. 16, 2006) (noting that "*Earley*, while it may be treated as useful and persuasive, is not binding," whereas *Matter of Deal v. Goord*, 778 N.Y.S.2d 319 (App. Div. 2004) was binding, and had found that the administrative imposition of PRS was not unlawful).[7]

Thus, from the time that the Second Circuit issued its opinion in *Earley* in June 2006 until the New York Court of Appeals issued its opinions in the *Sparber* and *Garner* cases on April 29, 2008, it was not clearly established that DOCS could not enforce the terms of Ruffins's PRS. Accordingly, it was objectively reasonable for defendants to have continued to enforce Ruffins's PRS term and re-arrest him for violation of the terms of his PRS in 2007. Thus, the defendants are entitled to qualified immunity for their actions post-*Earley* in connection with plaintiff's arrest and incarceration in 2007.

### c. Post-*Sparber*/*Garner*

The two New York Court of Appeals cases following *Earley*, which were rendered during plaintiff's second re-incarceration in 2008, along with Correction Law § 601-d, clarified the legal landscape with respect to PRS. As discussed below, the Court concludes that additional briefing is necessary to address the qualified immunity issue during this time period for plaintiff's re-arrest and incarceration in 2008 for a PRS violation.

In *People v. Sparber*, 889 N.E.2d 459 (N.Y. 2008), the Court of Appeals held that administratively imposed PRS is flawed because it does not comply with the statutory mandates of New York Criminal Procedure Law §§ 380.20 and 380.40. *See id.* at 460-61.

---

[7] At the same time, a separate, but related, strand of case law in New York was developing regarding the administrative imposition of PRS to a prisoner's sentence when the prisoner had pled guilty to a sentence that had not explicitly included PRS at the time of plea or sentencing. *See, e.g.*, *People v. Hill*, 879 N.E.2d 152, 155 (N.Y. 2007) ("At the time defendant pleaded guilty, she did not possess all the information necessary for an informed choice among different possible courses of action because she was not told that she would be subject to mandatory [PRS] as a consequence of her guilty plea. . . . [*People v. Catu*, 825 N.E.2d 1081 (N.Y. 2005), *People v. Van Deusen*, 853 N.E.2d 223 (N.Y. 2006), and *People v. Louree*, 869 N.E.2d 18 (N.Y. 2007)] made clear that the courts violated defendant's due process rights—not the defendant's sentencing expectations. Therefore we vacated the defendants' involuntary guilty pleas to remedy the constitutional violations. Here, we are constrained to give the same relief . . . ."); *People v. Figueroa*, 846 N.Y.S.2d 87, 87-88 (App. Div. 2007) (finding that PRS was not included when it was neither mentioned during prisoner's guilty plea or at sentencing, because the "Department of Correctional Services lacked authority to add PRS to [the prisoner's] sentence, since prison officials are conclusively bound by the contents of commitment papers accompanying a prisoner"

(citations omitted)); *People v. Stroman*, 848 N.Y.S.2d 849, 852 (Sup. Ct. Dec. 17, 2007) ("This Court therefore finds that [the New York Court of Appeals' holding in *People v. Hill*, 9 N.Y.3d 189 (N.Y. 2007)] not only directly holds that PRS must be part of a plea before sentence, but also indirectly mandates that PRS cannot automatically be imposed by DOCS when it was not a part of the plea before sentence. The Court of Appeals in *Hill* controls the outcome of the motion and prevents the automatic imposition of a period of PRS by DOCS.").

The Court held that a "clerk's notations on a worksheet or a commitment sheet, which are presumably recorded outside of the defendant's presence, do not satisfy the statutory mandate." *Id.* at 465. This is because defendants have a "statutory right to hear the court's pronouncement as to what the[ir] entire sentence encompasses, directly from the court," because sentencing is a "uniquely judicial responsibility." *Id.* at 464, 465 (additional citations omitted). The Court of Appeals cautioned, however, that "[t]he sole remedy for a procedural error such as this is to vacate the sentence and remit for a re-sentencing hearing so that the trial judge can make the required pronouncement." *Id.* at 465-66; *see also id.* at 464 ("The sentencing courts did err here, but that error can be remedied through resentencing. Nothing more is required."). The Court of Appeals classified "the failure to pronounce the required sentence amounts" as "only a procedural error, akin to a misstatement or clerical error, which the sentencing court could easily remedy." *Id.* at 466. Notably, however, the five cases before the court in *Sparber* involved prisoners who raised these claims during their initial term of imprisonment—not during their PRS term. Unlike Ruffins, these prisoners raised their PRS-related claims on their direct appeals.

On the same day, the Court of Appeals also decided *Garner v. New York State Department of Correctional Services*, 889 N.E.2d 467 (N.Y. 2008). In *Garner*, the petitioner pled guilty to second-degree attempted burglary but was not informed of the mandatory five-year PRS term at his plea allocution. *Id.* at 468. This PRS term was administratively added by DOCS. The Court of Appeals concluded that the administrative addition of a five-year PRS term by DOCS was in excess of DOCS' jurisdiction, and warranted issuance of a writ of prohibition preventing DOCS from imposing the PRS term on petitioner. *Id.* at 469-70. The Court

of Appeals ultimately held that DOCS should be prohibited from imposing a period of PRS on petitioner. *Id.* at 470.

Thus, while *Sparber* and *Garner* clearly reinforced that DOCS could not administratively impose PRS that had not been imposed at a judicial sentencing, the Court notes that both involved cases with factually distinct procedural postures—specifically, *Sparber* involved prisoners who were still serving their initial term of imprisonment, and *Garner* involved a prisoner who was serving PRS but who had pled guilty and had not been informed of the mandatory PRS to which he was submitting himself. As mentioned earlier, the New York Court of Appeals had previously held in *People v. Hill*, 879 N.E.2d 152 (N.Y. 2007) that when a defendant is not informed that he will be subject to mandatory PRS as a consequence of his guilty plea, that defendant's due process rights are violated. *Id.* at 155.

After *Sparber* and *Garner*, the New York legislature passed Correction Law § 601-d, which created a procedure by which improperly sentenced defendants could be identified and resentenced. This law became effective June 30, 2008, while Ruffins was still serving a term of imprisonment for his second PRS violation.

The Court concludes that further briefing is required by the parties regarding the post-*Sparber/Garner* period of Ruffins's imprisonment. Specifically, the parties' briefs on the current motion focused on whether the law was "clearly established" prior to *Earley*, and post-*Earley*, but did not focus on this last period. Notably, the complaint and briefs are ambiguous as to the date in April 2008 on which Ruffins was arrested for his second violation of PRS. It is thus unclear whether Ruffins's second arrest while on PRS

occurred before or after the Court of Appeals issued the *Sparber* and *Garner* opinions.

Moreover, there are several legal issues that require further briefing. For example, the Court notes that even the New York Court of Appeals decision in *People v. Sparber*, 889 N.E.2d 459 (N.Y. 2008), did not require immediate expungement of PRS from defendants' sentences. Instead, the New York Court of Appeals noted that in such an instance, the "error can be remedied through resentencing. Nothing more is required." *Id.* at 464; *see also id.* at 465 ("The sole remedy for a procedural error such as this is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement."). Furthermore, to the extent that plaintiff claims that *Earley* clearly required the invalidation of his term of PRS, the Court notes that plaintiff failed to allege that he raised this argument at his PRS violation hearing. Once plaintiff was found to have violated the conditions of his PRS at that hearing, *see* N.Y. Exec. Law § 259-i(3)(a)(i), (a)(iii), (c), (f), defendants were required to incarcerate plaintiff pursuant to the court's order—unless and until that order was vacated. In other words, plaintiff appears to be suggesting that defendants had a duty post-*Earley* (including post-*Sparber*/*Garner*) to identify those prisoners who had not had PRS judicially imposed at their sentencing many years prior, and to immediately release those prisoners, either from PRS or from incarceration due to violation of PRS. To the extent that plaintiff argues that such a duty existed—and was "clearly established"—the Court is unclear as to from where such rule would have come.

The Court intends to hold a phone conference to discuss the timing and scope of this supplemental briefing. Accordingly, the Court reserves decision pending the supplemental briefing as to whether defendants are entitled to qualified immunity in connection with Ruffins's imprisonment post-*Sparber*/*Garner*.[8]

IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss plaintiff's § 1983 claims on qualified immunity grounds for alleged unconstitutional conduct in connection with his arrest and incarceration for a PRS violation in 2007 prior to the decisions in *Sparber* and *Garner*. With respect to the § 1983 claim arising from plaintiff's arrest and incarceration in 2008, the Court requests additional briefing on the qualified immunity issue. A telephone conference will take place on April 20, 2010, at 11:00 a.m. to discuss the timing and scope of the supplemental briefing.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 31, 2010.
Central Islip, NY

* * *

The attorney for plaintiff is Scott Lockwood, Esq., 1476 Deer Park Avenue, Suite 3, Deer Park, NY 11729. The attorney for defendants is Andrew Hodge Meier of the Office of the

_____
[8] For the reasons noted *supra*, the Court also declines to consider the other grounds for dismissal at this time (which, even if granted, could potentially be corrected by amendments to the pleadings) but rather will address those issues if, after the supplemental briefing, the Court concludes that the entire action is not barred by qualified immunity.

New York State Attorney General, 120 Broadway, New York, NY 10271.