UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N<sup>o</sup> 08-CV-5240 (JFB) (ARL)
_____

NASHAUN RUFFINS,

Plaintiff,

VERSUS

THE DEPARTMENT OF CORRECTIONAL SERVICES,
THE NEW YORK STATE DIVISION OF PAROLE,
BRIAN FISCHER, individually and in his official capacity,
GEORGE B. ALEXANDER, individually and in his official capacity,
JOHN DOES 1-5, individually and in their official capacities, and
JOHN DOES 6-10, individually and in their official capacities,

Defendants.

_____

**MEMORANDUM AND ORDER**
November 2, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Nashaun Ruffins ("Ruffins") brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983"), seeking money damages against defendants George B. Alexander, as Chairman of the New York State Division of Parole, the New York State Division of Parole ("NYS Parole"), and John Does 1-5, as yet unnamed employees thereof (collectively, the "NYS Parole defendants"), as well as Brian Fischer, as the Commissioner of the Department of Correctional Services for the State of New York, the Department of Correctional Services for the State of New York ("DOCS"), and John Does 6-10, as yet unnamed employees thereof (collectively, the "DOCS defendants"), alleging that defendants wrongfully detained plaintiff on two occasions for violations of a term of post-release supervision ("PRS") that was unlawfully imposed by DOCS, in violation of his constitutional rights.[1] Plaintiff also

---

[1] In plaintiff's complaint, plaintiff identifies the Division of Parole John Does as 6-10 and the DOCS John Does as 1-5. (Compl. ¶¶ 12-13.) In the remainder of plaintiff's complaint, however, the Parole John Does are referred to as John Does 1-5 and the DOCS John Does are referred to as John Does 6-10. Thus, the Court refers to the John Doe defendants as they are

asserts claims of false arrest and imprisonment, negligence, and gross negligence under New York state law for the same alleged conduct by defendants. In particular, plaintiff contends that his PRS term was administratively imposed in 1999 by DOCS in violation of the Due Process Clause of the United States Constitution. Plaintiff was subsequently arrested for violations while serving his PRS sentence - once in 2007 and once in 2008 - and was incarcerated several months for each violation. Plaintiff asserts Section 1983 claims for these periods of incarceration and contends that he should not have been sentenced to any term of PRS, since the judge did not impose PRS at plaintiff's sentencing in 1999.

In a Memorandum and Order dated March 31, 2010 ("March 31, 2010 Memorandum "), this Court dismissed the claims regarding plaintiff's arrest and incarceration in 2007 for violation of the terms of his PRS on the grounds of qualified immunity, but sought additional briefing on the qualified immunity issue for plaintiff's arrest and incarceration in 2008 for a separate violation of the terms of his PRS.[2] *Ruffins v. Dep't of Corr. Servs.*, 701 F. Supp. 2d 385, 389 (E.D.N.Y. 2010). As this Court explained in detail in the March 31, 2010 Memorandum, which is incorporated by reference herein, defendants are protected by qualified immunity for the arrest and incarceration in 2007 because it was objectively reasonable for the defendants to believe, given the murky legal landscape that followed *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), that they were not violating plaintiff's rights in 2007 by continuing to enforce his PRS.

The arrest and incarceration in 2008 for another PRS violation, however, required additional briefing by the parties on the issue of qualified immunity. In particular, on April 29, 2008, two New York Court of Appeals decisions resolved the disagreement among lower state courts in the wake of *Earley* and made clear that, under state law, the mandatory PRS term had to be imposed at the time of sentencing to be valid. *See People v. Sparber*, 889 N.E.2d 459 (N.Y. 2008); *Garner v. N.Y. State Dep't of Corr. Servs.*, 889 N.E.2d 467 (N.Y. 2008). Shortly thereafter, the New York Legislature passed Correction Law § 601-d, which created a procedure by which individuals who had been improperly sentenced could be identified and resentenced.

Because it appeared from the complaint that plaintiff was incarcerated on a PRS violation after the decisions in *Sparber* and *Garner* but before the effective date of Section 601-d, the Court sought additional briefing by the parties to address the qualified immunity issue within that time frame.[3] After fully considering the

---

referred to throughout the remainder of the complaint.

[2] As noted in this Court's March 31, 2010 Memorandum, plaintiff conceded that the § 1983 claims against DOCS and NYS Parole, as well as those against the individual defendants in their official capacities, are barred by the Eleventh Amendment. Thus, the only remaining federal claims are those against the individual defendants in their individual capacities pursuant to § 1983.

[3] The Court recognizes that defendants also have moved to dismiss on other grounds: (1) that plaintiff's action is barred by the statute of limitations; (2) that there is no allegation that defendants were personally involved in the alleged constitutional deprivation; and (3) that plaintiff fails to state a claim under § 1983 for false arrest and imprisonment. In the March 31, 2010 Memorandum, the Court found the statute of limitations argument to be without merit. With respect to the other grounds, the Court declines to address those arguments because it concludes, as discussed *infra*, that defendants are protected by qualified

2

supplemental briefing, the Court concludes, for the reasons set forth below, that defendants are entitled to qualified immunity with respect to the claims regarding plaintiff's arrest and incarceration in 2008 for a separate violation of the terms of his PRS. Accordingly, defendants' motion to dismiss the federal claims is granted in its entirety.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint ("Compl."), as well as several exhibits attached to the defendants' moving papers.[4] These facts are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Plaintiff was sentenced on October 27, 1999 in the Supreme Court, Suffolk County, to two concurrent determinate prison terms of eight years. (Declaration of Andrew Meier ("Meier Decl."), Ex. B, Apr. 10, 2009, ECF No. 8.) He was received into the custody of DOCS on December 9, 1999. (Meier Decl., Ex. C.) On March 27, 2007, plaintiff was released from custody and began serving his five-year term of PRS. (Meier Decl., Ex. D.)

Plaintiff claims that he was never sentenced by any judge to any term of PRS. (Compl. ¶¶ 18, 25.) Instead, plaintiff alleges that unknown employees of DOCS, namely John Does 6-10, imposed the PRS term. (Compl. ¶¶ 19, 26.)

Subsequent to his release from DOCS' custody in March 2007, plaintiff was incarcerated in April 2007 for a violation of the terms of his PRS. (Compl. ¶16.) The incarceration was based upon a violation petition allegedly filed by an unknown agent or agents of NYS Parole, namely John Does 1-5. (Compl. ¶ 17.) Plaintiff was released

---

immunity with respect to the § 1983 claims in connection with the 2008 arrest and incarceration.

[4] With respect to the exhibits submitted by defendants, the Court takes judicial notice of the underlying state court sentence that was the basis of plaintiff's PRS term, as well as the administrative documentation of plaintiff's custody and release from DOCS. *See, e.g.*, *Holloway v. McFarland*, Civil No. 07-2032 (AET), 2007 WL 3376683, at *1 n.1 (D.N.J. Nov. 13, 2007) ("Because Plaintiff's confinement status is available publicly on the DOC website, the Court takes judicial notice of the fact that Plaintiff was released from the custody of the DOC on August 9, 2007."); *Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (noting that a court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." (internal quotation marks and citation omitted)); *Washington v. U.S. Tennis Ass'n*, 290 F. Supp. 2d 323, 326 (E.D.N.Y. 2003) (stating that a court is "permitted to take judicial notice of court documents from previous actions"); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y. 2006) (noting that "the Court properly can take judicial notice of the filings and . . . [an] Order in the Connecticut state court action" (citing *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue."))); *Hill v. Goord*, 63 F. Supp. 2d 254, 256 (E.D.N.Y. 1999) ("Federal Rule of Evidence 201(b) provides that '[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.' In the Court's view, the Orders and documents related to Hill's related state case and parole hearings are capable of determination by sources whose accuracy cannot reasonably be questioned.").

3

from the custody of DOCS in July 2007. (Compl. ¶ 20.)

Plaintiff was again arrested by DOCS on April 2, 2008 for a violation of the terms of his PRS. (Compl. ¶ 23; Second Declaration of Andrew Meier ("Second Meier Decl."), Ex. 1, May 27, 2010, ECF No. 18.) A violation petition was allegedly filed by John Does 1-5 of NYS Parole. (Compl. ¶ 24.) Pursuant to New York Correction Law § 601-d, DOCS referred plaintiff back to the sentencing court and on September 17, 2008, pursuant to Penal Law § 70.85, the court re-sentenced plaintiff to his original sentence without any term of PRS. (Meier Decl., Ex. E.) Plaintiff was released by DOCS on September 26, 2008. (Compl. ¶ 27.)

### B. Procedural History

Plaintiff filed this action on December 29, 2008. Defendants filed a motion to dismiss on April 10, 2009. Plaintiff submitted his opposition on May 13, 2009. Defendants submitted their reply on May 29, 2009. Oral argument was held on June 19, 2009. At a telephone conference on January 8, 2010, the Court sought supplemental briefing. On March 31, 2010, the Court issued a Memorandum and Order granting the defendants' motion to dismiss in part, and deferring ruling in part, pending supplemental briefing. On May 27, 2010, defendants submitted a supplemental memorandum in support of their motion to dismiss. Plaintiff filed an opposition on June 21, 2010, and defendants replied on July 9, 2010. Defendants submitted an additional letter on August 25, 2010. The Court has fully considered the arguments and submissions of the parties.

### II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents

4

attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

### III. DISCUSSION

Plaintiff asserts several causes of action pursuant to § 1983 based upon the alleged violations of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff alleges that his constitutional rights were violated by the defendants, including the individual defendants in their individual capacities, when they incarcerated him in 2008 for violations of his administratively-imposed term of PRS.

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

Here, defendants do not argue that they did not act under color of state law. Instead, defendants move to dismiss the § 1983 claims on the ground that, *inter alia*, defendants are entitled to qualified immunity for their actions.

### A. Qualified Immunity

Defendants argue that all of the individual defendants are entitled to dismissal of the § 1983 claims against them on the grounds of qualified immunity. As discussed in the March 31, 2010 Memorandum, the Court concluded that defendants were entitled to qualified immunity for their actions in the pre-*Earley*, as well as the post-*Earley* and pre-*Sparber*/*Garner*, time periods. The Court sought additional briefing to determine the applicability of the doctrine of qualified immunity to the plaintiff's incarceration in April 2008.

### 1. Legal Standard

Government actors may be shielded from liability for civil damages by qualified immunity, i.e., if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *see also Fielding v. Tollaksen*, 257 F. App'x 400, 401 (2d Cir. 2007*)* ("The police officers, in turn, are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). As the Second Circuit has also noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Thus, qualified immunity, just like absolute immunity, is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Accordingly, the availability of qualified immunity should similarly be decided by a court "[a]t the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

Nonetheless, the Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also McCray v. City of New York*, Nos. 03-CV-9685, 03-CV-9974, 03-CV-10080, 2007 WL 4352748, at *18, 2007 U.S. Dist. LEXIS 90875, at *66 (S.D.N.Y. Dec. 11, 2007) ("A defendant asserting a qualified immunity defense at the 12(b)(6) stage . . . faces a formidable hurdle. Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, the defense of qualified immunity [usually] cannot support the grant of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." (internal citations and quotation marks omitted)). In particular, the facts supporting the defense must be clear from the face of the complaint. In addition, in such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id*.

### 2. Application

The parties' supplemental submissions clarify that the plaintiff's second arrest for a PRS violation took place on April 2, 2008. (Second Meier Decl., Ex. 1.) The Court of Appeals issued the *Sparber* and *Garner* decisions on April 29, 2008. Thus, plaintiff's second arrest took place during the post-*Earley* and pre-*Sparber/Garner* period. This Court previously held in the March 31, 2010 Memorandum that defendants are entitled to qualified immunity for their actions during that period. Specifically, this Court explained that it was objectively reasonable for all DOCS and NYS Parole officials to believe that continued enforcement of an administratively imposed period of PRS was not in violation of a prisoner's constitutional rights for several reasons. First, even after *Earley*, state courts continued to disagree as to the precise application of *Earley* to Penal Law § 70.45, and some state courts held that PRS was automatic under state law such that

6

it was not administratively imposed in violation of *Earley*. Second, *Earley* did not address the effect of its decision on those currently incarcerated due to violations of administratively imposed PRS terms or those currently under supervision for administratively imposed PRS terms. Consequently, it was unclear whether (1) the jail house doors had to be opened for those in custody on violations of administratively imposed PRS terms, and supervision immediately terminated for those individuals with administratively imposed PRS terms, or (2) enforcement of the PRS terms could continue under state law until there was a re-sentencing which either eliminated the term or corrected the procedural error in the imposition of the PRS term. In fact, on remand in the *Earley* case, the federal judge concluded that Earley should not be released from incarceration on his PRS violation pending his re-sentencing in state court. Given this critical ambiguity regarding the implications of the *Earley* decision on those under PRS supervision and the disagreement among state courts about *Earley*'s application to interpretations of state law, it was objectively reasonable for the defendants to believe, given the murky legal landscape that followed *Earley*, that they were not violating plaintiff's rights on April 2, 2008 by continuing to enforce his PRS.

To the extent that the plaintiff argues that the defendants violated his constitutional rights by failing to release or resentence him immediately after *Sparber* and *Garner* were decided, or immediately after Correction Law § 601-d became effective on June 30, 2008, this Court concludes that defendants are entitled to qualified immunity for their actions with respect to plaintiff's administratively-imposed term of PRS during the period of time that elapsed between April 29, 2008 and September 26, 2008.[5]

With respect to the period of time after *Sparber* and *Garner* were issued on April 29, 2008 and before Correction Law § 601-d became effective on June 30, 2008, neither the courts nor the Legislature had acted to provide a specific procedure for DOCS and NYS Parole to follow in order to identify affected inmates and parolees and refer them to sentencing courts so that the invalid terms of PRS could be remedied.[6] This

---

[5] Plaintiff appeared before a state judge on September 17, 2008. He was released from custody on September 26, 2008, after the judge declined to resentence him to PRS.

[6] Defendants have submitted evidence which demonstrates that DOCS and NYS Parole developed such a process through the Post-Release Sentencing Initiative. (Second Meier Decl., Ex. 3 at ¶ 36.) The Post-Release Sentencing Initiative included reviewing approximately 40,000 sentence and commitment orders, as well as coordinating with other agencies to identify the scope of the PRS issues. (Second Meier Decl., Ex. 3 at ¶¶ 36, 40.) Within days of the *Sparber* and *Garner* decisions, DOCS, in consultation with other agencies, began addressing the PRS problem by giving notice to the courts and district attorneys that the resentencings of thousands of inmates might be required. (Second Meier Decl., Ex. 3 at ¶ 36.) The task of reviewing the sentence and commitment orders was made more difficult because DOCS and Parole often lacked the sentencing minutes, which served as the only document that informed them as to what was actually pronounced at sentencing. (Second Meier Decl., Ex. 3 at ¶¶ 46-52.) The goal of the Initiative was to place each matter in which there appeared to be an error in sentencing before the sentencing court and have the court make a determination as to whether PRS should apply. (Second Meier Decl., Ex. 3 at ¶ 56.) Additionally, DOCS sought an emergency order authorizing DOCS to retain in its custody the inmates and parolees affected by the administrative imposition of PRS until such time as each member of that class had been calendared for resentencing. (Second Meier Decl., Ex. 3 at ¶ 62.) Although plaintiff was on notice at the April 20, 2010 conference that

monumental task could not be accomplished overnight, and thus it was objectively reasonable for the defendants not to have resentenced or released plaintiff immediately after *Sparber* and *Garner* were decided.

Moreover, *Sparber* and *Garner* provided no guidance on how exactly to achieve resentencing, and there was no specific remedy in place. Thus, effective June 30, 2008, the New York Legislature passed Correction Law § 601-d, which required DOCS and NYS Parole to notify the appropriate sentencing court about the existence of any inmate or parolee whose PRS was called into question by *Sparber* and *Garner*. Notably, the Legislature did not impose a time-frame on DOCS and NYS Parole in which to notify the sentencing courts.[7] In the instant case, plaintiff was identified, referred for resentencing, and appeared before a judge for resentencing on September 17, 2008. Defendants fully complied with Correction Law § 601-d and ensured that plaintiff was resentenced promptly - indeed, within a mere three months - following the effective date of that law. Thus, defendants' actions were objectively reasonable.

This result is consistent with the decisions of other courts in this Circuit. In *Barlow v. Fischer*, for example, the court held that defendants were entitled to qualified immunity where the plaintiff, who was reincarcerated for violations of an administratively-imposed term of PRS, was released approximately two weeks after the enactment of Correction Law § 601-d. *Barlow v. Fischer*, 9:10-CV-535 (MAD/TWD), 2012 U.S. Dist. LEXIS 94623, at *25-26 (N.D.N.Y May 15, 2012), *adopted by* 2012 U.S. Dist. LEXIS 94624 (N.D.N.Y. July 9, 2012). In *Barlow*, the plaintiff had been reincarcerated for parole violations in October 2007. *Id.* at *4. After *Sparber* and *Garner* were issued, but prior to the enactment of Correction Law § 601-d, DOCS sent a letter to the plaintiff's sentencing judge giving the judge the option of resentencing the plaintiff or having DOCS set a release date. *Id.* at *26. The judge declined to resentence the plaintiff, so DOCS set a release date of July 15, 2008. *Id.* at *26. With respect to plaintiff's claim that defendants should have immediately released him, the court held that defendants were protected by qualified immunity because there was "a lack of judicial clarity concerning the constitutionality of administratively imposed PRS in the state courts" and plaintiff "presented no clearly established authority obligating or even authorizing DOCS to revoke his administratively imposed, statutorily mandated PRS, release him from incarceration for violation of the terms of his PRS, or even to move for resentencing until Correction Law § 601-d was enacted." *Id.* at 34-35.

Similarly, in *Albergottie v. New York City*, the court found that defendants were entitled to qualified immunity for continuing to enforce the plaintiff's extra-judicial PRS until May 2008. *Albergottie v. New York*

---

defendant may submit this type of evidence in connection with the supplemental briefing (and there was no objection to such evidence in plaintiff's opposition), because this is a motion to dismiss, the Court (in an abundance of caution) has not considered this evidence which is outside the pleadings. However, even without consideration of this evidence, the Court concludes that qualified immunity is warranted for the post-*Sparber* and *Garner* period for the reasons discussed herein.

[7] However, once the sentencing court receives notification from DOCS, the court must issue a written determination and order within forty days pursuant to Correction Law § 601-d(4)(d), absent an extension of time.

8

*City*, 08 Civ. 8331 (SHS), 2011 U.S. Dist. LEXIS 155801 (S.D.N.Y. Feb. 15, 2011). The court explained, "until June 30, 2008, a reasonable State DOCS or parole official would not realize that he had a duty or authority to seek the correction of a procedurally deficient but otherwise valid and statutorily required period of PRS." *Id.* at \*16-17. Only after Correction Law § 601-d was enacted did the defendants have a duty to seek resentencing. *Id.* at \*17; *see Scott v. Fischer*, 616 F.3d 100, 109 (2d Cir. 2010) (no affirmative duty on the part of government officials to "seek to resentence or otherwise handle the cases of inmates who had received administrative imposition of PRS" until enactment of Correction Law § 601-d). Although the plaintiff in *Albergottie* was released prior to the enactment of Correction Law § 601-d, whereas Ruffins was released in September 2008, defendants in this case fulfilled their duty by acting promptly to identify Ruffins and notify the sentencing court, and the court subsequently resentenced and released Ruffins. *See Joyner-El-Qawi-Bey v. Russi*, 439 F. App'x 36, 37 (2d Cir. 2011) (defendants entitled to qualified immunity where PRS term was administratively imposed in 2006 and enforced until the plaintiff's resentencing in 2009); *Rivers v. Fischer*, 390 F. App'x 22, 24 (2d Cir. 2010) (defendants entitled to qualified immunity where plaintiff, who was serving an additional four years' imprisonment for violating the terms of his administratively-imposed PRS, was "brought before a judge and released less than two months" after the effective date of Correction Law § 601-d); *Rodriguez v. Fischer*, 08-CV-4662 (SJF)(MLO), 2010 U.S. Dist. LEXIS 10091, at \*19-20 (E.D.N.Y. Feb. 3, 2010) (defendants entitled to qualified immunity where plaintiff remained incarcerated until August 2008 for violations of an administratively-imposed term of PRS); *see also King v. Cuomo*, 465 F. App'x 42, 45 (2d Cir. 2012) (defendants entitled to qualified immunity because "neither clearly established principles of double jeopardy nor due process prohibited defendants from administratively imposing legislatively mandated PRS terms before 2006, or from obtaining judicial resentencing of offenders already released from their determinate prison terms before 2010," when the Court of Appeals held in *People v. Williams*, 899 N.Y.S.2d 76 (2010) that it was a violation of the Double Jeopardy Clause to resentence offenders to terms of PRS when those offenders had already completed their determinate terms and been released from custody).

In sum, defendants are entitled to qualified immunity for arresting and reincarcerating plaintiff on April 2, 2008 because it was objectively reasonable prior to the issuance of *Sparber* and *Garner* for all DOCS and NYS Parole officials to believe that continued enforcement of an administratively imposed period of PRS was not in violation of a prisoner's constitutional rights. To the extent plaintiff alleges that defendants violated his constitutional rights by failing to resentence or release him after *Sparber* and *Garner* and prior to September 2008, defendants are also entitled to qualified immunity. The Court of Appeals did not specify a process for identifying affected individuals or a remedy for the administrative imposition of PRS in *Sparber* and *Garner*. It is objectively reasonable that defendants were not able to identify the affected individuals within days or even months of the *Sparber* and *Garner* decisions. Moreover, once the Legislature enacted Correction Law § 601-d, defendants acted promptly to locate and refer plaintiff for resentencing, and plaintiff was ultimately released within three months of the enactment of Correction Law § 601-d.

B. State Law Claims

Plaintiff's complaint also asserts causes of action under New York State law. Having determined that the federal claims do not survive the defendants' motion to dismiss, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive the motion to dismiss and dismisses such state claims without prejudice.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss plaintiff's § 1983 claims on qualified immunity grounds for alleged unconstitutional conduct in connection with his arrest and incarceration for a PRS violation on April 2, 2008 and his continued incarceration until September 2008. The Court, in its discretion, declines to exercise supplemental jurisdiction over any state law claims. The Clerk of the Court shall close the case and enter judgment accordingly.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  November 2, 2012
Central Islip, NY

\* \* \*

The attorney for plaintiff is Scott Lockwood, Esq., 1476 Deer Park Avenue, Suite 3, Deer Park, NY 11703.  The attorney for defendants is Andrew Hodge Meier of the

Office of the New York State Attorney General, 120 Broadway, Fourth Floor, New York, NY 10271.